# CIRCUIT COURT OF THE CITY OF NORFOLK

Dragas Management Corp.

v.

Taishan Gypsum Co., Ltd.,
f/k/a Shandong Taihe
Dongxin Co., Ltd.

June 16, 2015

Case No. CL11-8663

By Judge Mary Jane Hall

By Final Order dated June 3, 2013, this Court awarded a default judgment to Plaintiff Dragas Management Corporation in an amount exceeding four million dollars against Defendant Taishan Gypsum Co., Ltd., for damages incurred in the remediation of homes built with defective Chinese drywall. In an effort to execute on that judgment, Dragas issued a subpoena *duces tecum* calling for the production of documents by April 27, 2015, as well as a summons to answer debtor interrogatories on April 29, 2015. Taishan, appearing specially, filed a motion to quash these summonses and a motion to dismiss Plaintiff's Complaint for failure to serve process pursuant to Virginia Code § 8.01-277. Dragas filed a motion for rule to show cause pursuant to its subpoena *duces tecum* and summons to answer debtor interrogatories. For the reasons stated herein, the motion to dismiss and the motion to quash are both denied; and the motion for rule to show cause is granted.

### Factual Background

The documents submitted as exhibits to the Court's Final Order of June 3, 2013, as well as those appended to Plaintiff's memoranda regarding the instant motions, establish the following facts. Dragas sustained its losses relating to Taishan's defective Chinese drywall in 2009 and 2010.

*See* Final Order Ex. 2. Dragas' counsel remained in frequent contact with Taishan's New York counsel, Hogan Lovells US, L.L.P., both before and after the filing of the Complaint in December of 2011. When New York counsel emailed their position about the insufficiency of substituted service on Taishan through the Secretary of the Commonwealth, Dragas hired APS International, Ltd., to effect service pursuant to the Hague Service Convention. APS translated the Summons and Complaint into Chinese and served two copies of the Summons, Complaint, and translations to the Central Authority in China. Pursuant to Chinese procedure, the Central Authority sent the service package to local Chinese courts to serve Taishan. The Central Authority's Certificate, mailed back to the United States in March 2013 with underlying certifications from the local Chinese courts, states: "With regard to Shandong Superior People's Court's Correspondence NO. (2012) 87, to serve legal documents to Taishan Gypsum Co., Ltd., this is to inform you that the service failed due to Taishan Gypsum Co., Ltd.'s refusal to accept the documents." Mem. in Supp. of Mot. for Rule To Show Cause Ex. 14, 4/30/2015. Dragas also served Taishan through the Secretary of the Commonwealth and the State Corporation Commission in October 2012 and November of 2012, respectively, the second time with translated copies of the Complaint and Summons.

*Taishan's Motion To Dismiss*

Taishan argues that the Complaint must be dismissed because (i) Dragas' attempted service in China did not comply with Chinese law and thus fails to satisfy the Hague Convention and (ii) Dragas did not effect service within one year of commencement of the action, as required by Va. Code § 8.01-277.

"The Hague Convention is an international treaty that applies in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Coombs v. Iorio*, 2008 U.S. Dist. lexis 66251, *3-*4 (E.D. Okla. Aug. 28, 2008) (internal quotation marks omitted) (citing Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638 [hereinafter, Hague Convention]; *Mones v. Commercial Bank of Kuwait, S.A.K.*, 502 F. Supp. 2d 363, 366 (S.D. N.Y. 2007)). The Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." The Hague Convention, 20 U.S.T. at 362. The Supreme Court of the United States has described the Convention as follows:

> [The Hague Convention] requires each state to establish a central authority to receive requests for service of documents from other countries. Once a central authority receives a

request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. The central authority must then provide a certificate of service that conforms to a specified model. A state also may consent to methods of service within its boundaries other than a request to its central authority.

*Volkswagenwerk, A.G. v. Schlunk,* 486 U.S. 694, 698-699 (1988) (internal citations omitted; internal quotation marks omitted) (citing 20 U.S.T. 362, Arts. 2, 5, 6, 8-11, 19). "[C]ompliance with the Convention is mandatory in all cases to which it applies." *Volkswagenwerk, A.G.,* 486 U.S. at 705.

Taishan argues that Dragas' attempted service in China failed because Chinese law allegedly required the process servers to leave the service package on Taishan's premises. The exclusive authority for this declaration of Chinese law comes from a decision of the United States District Court for the Southern District of California, *Samsung Elec. Co. v. Early Bird Savings,* 2014 U.S. Dist. lexis 141233 (S.D. Cal. Oct. 1, 2014) [hereinafter, *Samsung*]. The *Samsung* court reached its conclusion about the requirements of Chinese law by reference to a book of unknown reliability titled *The Civil Procedure Law & Court Rules of the People's Republic of China,* written in 2006 by author Wei Luo. The *Samsung* case, like this one, involved a Chinese defendant who refused to accept documents that were being served pursuant to the Hague Convention. The Court included the following quotation attributed to Mr. Luo's book:

> If the person on whom the litigation documents are to be served or the adult family member living with him refuses to receive the documents, the person serving the documents shall ask representatives from the relevant grass-roots organization or the unit to which the person on whom the documents are to be served belongs to appear on the scene, explain the situation to them, and record on the receipt the reasons of the refusal and the date of it. After the person serving the documents and the witnesses have affixed their signatures or seals to the receipt, the documents shall be left at the place where the person on whom they are to be served lives and the service shall be deemed completed.

*Samsung,* 2014 U.S. Dist. lexis 141233, at *6-*7. The District Court held: "Clearly, where the person to be served refuses the documents, Chinese law indicates the proper procedure is to make a note of the refusal and leave the documents with the refusing person. That is not what happened here." *Id.* at *7.

Even if the *Samsung* Court had quoted Mr. Luo's book correctly, which it did not, this Court would be far less willing than it was to conclude that the quoted section has any relevance to service upon a corporate defendant. Corporations do not have "adult family members living with him." Corporations do not have a place where they "live."

In any event, the *Samsung* decision misquoted Mr. Luo in one important respect. *Samsung* quotes Mr. Luo's book as stating, "the documents *shall* be left at the place where the person on whom they are to be served lives[.]" *Id.* (emphasis added). The book, however, states that the document "may" be left. Wei Luo, *The Civil Procedure Law & Court Rules of the People's Republic of China* 62 (2006). It certainly does not state, as *Samsung* held, that service is a nullity *unless* documents are left with the uncooperative party.

The Court is not persuaded by the reasoning or the authority of the *Samsung* decision. With no expert testimony about the reliability of Mr. Luo's book as a learned treatise within the meaning of Rule 2:706 of the Rules of the Virginia Supreme Court, the quoted section is inadmissible hearsay that is being offered for its truth. The Court would be reluctant to conclude that that local Chinese officials would mail back the certificate of service if a required step in the process had not been completed without something more authoritative regarding the requirements of Chinese law.

Dragas relies upon the much-closer-to-home decision of the Virginia Court of Appeals in *Lutes v. Alexander*, 14 Va. App. 1075 (1992), which involved similar facts concerning Hague Convention service. The Court stated: "To hold that a defendant may defeat the jurisdiction of the court by an arbitrary refusal to accept service is tantamount to granting anyone the right to avoid the valid jurisdiction of our courts based on a personal whim. We decline to so hold." *Id.* at 1089.

Any alleged insufficiency in the Hague Convention service here relates exclusively to Taishan's refusal to accept service. Taishan's motion to dismiss requires this Court to adopt a holding that is squarely contradicted by *Lutes*, which the Court declines to do. Accordingly, the Court holds that Plaintiff's service under the Hague Convention constituted effective service. Further, in light of the opinion of the United States District Court for the Eastern District of Louisiana that Taishan had sufficient minimum contacts with Virginia to support the exercise of personal jurisdiction in Virginia, the Court further holds that substituted service on the Secretary of the Commonwealth constituted effective service on Taishan. *See In re Chinese Manufactured Drywall Products Liability Litigation*, 894 F. Supp. 2d 819 (E.D. La. 2012); *see also* Va. Code § 8.01-329.

The Court also determines that Taishan's motion to dismiss under Va. Code § 8.01-277 for Dragas' failure to effect service within one year should have been made before a default judgment was entered. Because this Court has already entered judgment against Taishan, relief is available only

under Va. Code § 8.01-428, which provides authority to set aside default judgments in cases where defendants have not been served with process. Were the Court to construe Taishan's motion liberally as a motion to set aside the default judgment rather than to dismiss the Complaint, the motion would nonetheless be denied based on the Court's ruling regarding the validity of service on Taishan.

In summary, the Court finds:

(a) Service of process of the Complaint and other associated documents giving rise to the Final Judgment Order entered in this matter on June 3, 2013, was sufficient, effective, and timely;

(b) The Final Judgment Order is a valid and enforceable order of this Court that will not be set aside or vacated;

(c) The Summons To Answer Interrogatories and Subpoena *Duces Tecum* that Dragas caused to be issued on April 13, 2015, and served on Taishan are valid exercises of Dragas' rights pursuant to Virginia Code §§ 8.01-506 and 8.01-506.1 in aid of execution on the Final Judgment Order; and

(d) Taishan has failed to show cause why it should not appear as commanded by the Summons To Answer Interrogatories and why it should not produce all documents requested via the Subpoena *Duces Tecum*.

It is hereby adjudged, ordered, and decreed that Taishan's Motion to Dismiss and Motion To Quash are denied. It is further ordered that Dragas' Motion for Rule To Show Cause is granted, and Taishan is ordered (i) to comply fully with Dragas' Subpoena *Duces Tecum* and to produce a full and complete copy of the transcript of the deposition of Taishan taken on June 2-4, 2015, pursuant to the Notice of Deposition attached as Exhibit A-1 to the Subpoena *Duces Tecum* on or before June 22, 2015, and (ii) to appear in person by a knowledgeable corporate representative(s) in this Court on July 15, 2015, at 9:30 a.m. to answer interrogatories in accordance with the Summons To Answer Interrogatories. Such proceeding shall be convened by this Court pursuant to Virginia Code § 8.01-506(B) and presided over by this Court to the extent objections, if any, are raised to questions posed by Dragas. The parties shall forthwith attempt to reach an agreement on the production of any highly confidential and privileged documents that is consistent with the confidentiality orders issued by Judge Eldon Fallon in *In re Chinese-Manufactured Drywall Products Liability Litigation*. If the parties are not able to reach such an agreement, then they are to contact the Court to rule on how confidentiality of the relevant documents should be treated in this litigation.

Notwithstanding the above, if Taishan pays Dragas an amount agreeable to Dragas in settlement of the Final Judgment Order prior to the above-identified Subpoena *Duces Tecum* return date or the Debtors Interrogatory and Dragas files an Authorization for Partial or Full Release of Judgment Lien, then Taishan will not have to participate in any such discovery

scheduled to occur thereafter. Any discovery materials provided by Taishan to Dragas pursuant to this Order shall be returned to Taishan in that event.

Endorsements by counsel of record on this Order are waived pursuant to Rule 1:13 of the Rules of the Virginia Supreme Court. Taishan's objections are noted for all the reasons stated in briefs and at oral argument. The Clerk is directed to forward copies of this Order to counsel of record.